IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>REAL PROPERTY LOCATED AT<br>505 PRAIRIE VIEW DRIVE,<br>FAIRFAX, IOWA,<br><br>    Defendant,<br><br>And Concerning.<br><br>MICHAEL CUTTER,<br><br>    Claimant. | No. C13-0050<br><br>RULING ON MOTION FOR<br>SUMMARY JUDGMENT |

TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.  PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.  RELEVANT FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     A.   Acquisition, Ownership, and Occupancy of the Property . . . . . . . . . 3
     B.   Nelson's and Cutter's Drug Activities . . . . . . . . . . . . . . . 4
     C.   Search of the Property on December 18, 2012 . . . . . . . . . . . . . 6
     D.   Cutter's Description of his Knowledge . . . . . . . . . . . . . . . 7
     E.   Cutter's Financial Situation . . . . . . . . . . . . . . . . . . . 8

V.   SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . 9

VI.  DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
     A.   "Proceeds" Alternative . . . . . . . . . . . . . . . . . . . . . 10
     B.   "Facilitation" Alternative . . . . . . . . . . . . . . . . . . . 10

VII. ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## I. INTRODUCTION

This matter comes before the Court on the Motion for Summary Judgment (docket number 56) filed by the United States on August 26, 2014, the Resistance (docket number 63) filed by the Claimant on September 26, and the Reply (docket number 66) filed by the United States on October 6. Pursuant to Local Rule 7.c, the motion will be decided without oral argument.

## II. PROCEDURAL HISTORY

On May 15, 2013, the United States filed a Verified Complaint for Forfeiture In Rem (docket number 1), seeking forfeiture of the real property known locally as 505 Prairie View Drive, Fairfax, Iowa.[1] On August 21, 2013, Michael Cutter filed a claim (docket number 34) on the subject property and an answer (docket number 35) to the complaint.

On November 4, 2013, the Court adopted a proposed Scheduling Order and Discovery Plan submitted by the parties. Also at that time, the case was referred to me for the conduct of all further proceedings and the entry of judgment, in accordance with 28 U.S.C. § 636(c) and the consent of the parties. After consulting with the attorneys, this case was scheduled for a bench trial on November 24, 2014.

On August 26, 2014, the United States timely filed the instant motion for summary judgment.

---

[1] The verified complaint also sought forfeiture in rem of the real property known locally as 1740 Southview Drive NW, Cedar Rapids, Iowa. Default judgment was entered by Chief Judge Linda R. Reade on that property, and it is not the subject of this motion for summary judgment. *See* docket numbers 37 and 44.

## III. ISSUES PRESENTED

The United States seeks to forfeit the real property located at 505 Prairie View Drive, Fairfax, Iowa.[2] The United States claims that the property represents proceeds from the illegal distribution of controlled substances, and/or was used to facilitate the distribution and storage of illegal controlled substances. Michael Cutter, who is the record titleholder of the property, denies the allegations, and affirmatively asserts that forfeiture would constitute an excessive fine and, if the property is forfeitable, he is entitled to remission or mitigation of forfeiture.

## IV. RELEVANT FACTS

### A. Acquisition, Ownership, and Occupancy of the Property

Claimant Michael Cutter purchased the subject property on June 7, 2005. At that time, it was a vacant lot. Cutter borrowed $217,600 to build a house on the property, secured by a construction mortgage. The mortgage was paid off in March 2009. The property is currently assessed at $262,584 for tax purposes.

In March or April 2009, Nels Nelson and A.S. moved into the property.[3] In its statement of undisputed facts, the United States asserts that Cutter and Nelson were "good friends" and Cutter allowed Nelson to live "rent-free" at the subject property. In response, Cutter acknowledges that he has known Nelson for several years and, as discussed in more detail below, has purchased marijuana from Nelson in the past. Cutter does not deny the United States' assertion that Nelson was permitted to reside at the house rent-free. Cutter asserts that it is misleading, however, for the United States to state that Nelson wanted to live at the property "so people would not know where he lived." According to Cutter, "Mr. Nelson did not move into the Fairfax house in order to hide

---

[2] The legal description of the property is Lot 7, Prairie View Estates — Part 1 to Fairfax, Linn County, Iowa.

[3] Cutter was living at a house in Cedar Rapids which he owns. The Cedar Rapids house is currently assessed at $154,991, and Cutter is making mortgage payments.

3

drug dealing from others, Mr. Nelson moved into the Fairfax house to escape his past history of drug dealing."[4] Cutter asserts that Nelson wanted to get out of the marijuana distribution business after the Sound Shop, a business owned by Nelson, was "raided" in May 2008.

### B. Nelson's and Cutter's Drug Activities

Nelson's and Cutter's drug activities are described in declarations signed by A.T. (formerly known as A.S.) and C.S., dated August 17 and August 20, 2014, respectively. According to her declaration, A.T. was living with Nelson between 2005 and 2009 and knew that Nelson was selling marijuana from his residence in Cedar Rapids. "Many different people," including Cutter, would come to the Cedar Rapids house and "leave with duffle bags of marijuana."[5] According to A.T., Cutter would obtain large amounts of marijuana from Nelson and sell the marijuana. Cutter was Nelson's largest customer and would take 30 or more pounds each time he picked up marijuana.

In his affidavit, Cutter admits purchasing marijuana from Nelson between 2005 and 2007, but denies that it was to the extent described by A.T. in her declaration. According to Cutter, he "occasionally" picked up marijuana from Nelson at Nelson's Cedar Rapids residence. According to Cutter, he obtained 1 to 2 pounds a month and 5 pounds "a couple of times," for a total of approximately 30-40 pounds. Cutter usually paid around $1,000 per pound.[6] In his affidavit, Cutter states that his profit averaged $250-$300 per pound for 30-40 pounds of marijuana from 2005 to early 2008, most of which was between

---

[4] Affidavit of Michael Cutter at 2, ¶ 4 (Claimant's App. 2).

[5] Declaration of A.T. (Gov. App. 258).

[6] Affidavit of Michael Cutter at 16, ¶ 18(B) (Claimant's App. 16).

4

2005 and early 2007. According to Cutter, his profit from the sale of marijuana "would have been at most between $7,500 and $12,000."[7]

A.T. lived with Nelson at the subject property in Fairfax for a year-and-a-half to two years. A.T. believed that they moved to the property in the fall of 2009. According to A.T., Nelson's residence in Cedar Rapids was broken into and "because of this Nelson wanted to move so no one would know where he was living." In her declaration, A.T. states that Cutter agreed to let them move into the property in Fairfax "because Nelson loaned Cutter money for his construction company and to pay his employees, so Cutter was in debt to Nelson." A.T. also believes that Nelson lent Cutter approximately $40,000 to $50,000 to pay off the mortgage on the property. According to A.T., there were "a lot of gatherings" at the property, and Cutter would come over and smoke marijuana.

Cutter denies that he let Nelson move into the house because Nelson loaned him money or because he was indebted to Nelson. According to Cutter, he agreed to let Nelson and A.T. move into the Fairfax property because A.T. was a realtor "and had agreed to stage the house and actively market it." According to Cutter, Nelson did not loan him the payoff amount for the mortgage. Nelson worked for Cutter's business for a period of time, operating a snowplow and performing some "marketing work."

In his declaration, C.S. states that Cutter introduced him to Nelson in 2006 or 2007. In his affidavit, Cutter admits that he introduced C.S. to Nelson in 2007 by giving each of them the other's telephone number because, according to Cutter, "I wanted to get out of the drug distribution business after the birth of my son in April of 2007."[8] According to C.S., he "broke up" marijuana for Nelson and Cutter, dividing 25 to 30 pounds of marijuana into one-pound packages. Cutter "fronted" 5 pounds of marijuana to C.S.,

---

[7] *Id.* at 19, ¶ 23 (Claimant's App. 19).

[8] Affidavit of Michael Cutter at 14, ¶ 17(A) (Claimant's App. 14).

5

which he then resold. On one occasion, Cutter picked up 25 to 30 pounds of marijuana from C.S.

C.S. was also involved in transporting marijuana at Nelson's request.[9] At one point, around 30 pounds of marijuana were delivered to the property in Fairfax, where Nelson was residing. On another occasion, C.S. delivered marijuana to the property in suitcases. On a third occasion, C.S. obtained marijuana in Colorado and delivered it to the property in Fairfax, where Nelson was residing. C.S. states that it was his "understanding" that the subject property belonged to Nelson, even though it was in Cutter's name. According to C.S., Cutter gave Nelson the property when Cutter was unable to pay $200,000 owed to Nelson. Cutter generally denies his knowledge of Nelson's and C.S.'s drug dealings. Cutter also denies that Nelson ever loaned him $200,000 and denies that he "gave" the house to Nelson. According to Cutter, Nelson loaned him $15,000 in 2010 to repair his house in Cedar Rapids. Cutter repaid approximately $8,000 of that loan and "the remainder was credited against Mr. Nelson's rent obligation for the Fairfax house."[10]

On May 28, 2014, C.S. was sentenced to thirteen months and one day of imprisonment following his plea of guilty to conspiracy to distribute more than 50 kilograms of marijuana.

### C. *Search of the Property on December 18, 2012*

Cedar Rapids Police Officer Bryan Furman, who is currently assigned to the DEA Task Force, signed a declaration describing a search of the property on December 18, 2012. Linn County sheriff deputies went to the property on that date to investigate a report of a stolen laptop taken in a burglary the day before. The laptop was equipped with a GPS tracking device, which showed it was located inside the residence at the subject property.

---

[9] Declaration of C.S. (Gov. App. 255).

[10] *Id.* at 15, ¶ 17(E) (Claimant's App. 15).

6

When officers arrived, Nelson stepped out of the residence and locked the door behind him. Nelson admitted that he had the computer, and told officers that he had received it from a friend earlier in the day. Nelson refused to give consent, however, for the officers to go inside the residence and retrieve the computer. When Nelson attempted to go back in the house through the garage door, deputies observed items which they believed may have been stolen. A search warrant was obtained for the residence.

Nelson was transported to the Cedar Rapids Police Department. According to the declaration of Officer Furman, Nelson dropped $100 bills in the back of the squad car, dropped $100 bills as he was being escorted to an interview room, and told officers that he had $4,500 on his person.[11] In fact, Nelson had $5,853 on his person.

The subject property was searched pursuant to the search warrant and officers found five bags of heroin, two bags of marijuana, loose marijuana, two small blocks of cocaine, two burnt spoons with filters, a glass marijuana pipe with marijuana residue, four syringes, one syringe with a dark-colored liquid which field tested for heroin, and numerous other items consisted with drug use.

### D. Cutter's Description of his Knowledge

In his affidavit filed in support of his resistance to the instant motion for summary judgment, Cutter admits that he received approximately 30 to 40 pounds of marijuana from Nelson between 2005 and 2008. According to Cutter, Nelson moved to the subject property "to escape his past history of drug dealing" after his business was raided in May 2008. According to Cutter, "[a]fter that raid Mr. Nelson wanted to get out of the marijuana distribution business and, to my knowledge, did get out of the business for several years."[12] Cutter further states, however, that he "became aware, substantially after Mr. Nelson and A.S. moved into the Fairfax house, that Mr. Nelson had resumed using

---

[11] Declaration of T.F.O. Bryan Furman (Gov. App. 248-49).

[12] Affidavit of Michael Cutter at 2, ¶ 4 (Claimant's App. 2).

7

controlled substances."[13] Cutter also states that he did not "expressly know" that Nelson had stolen property at the Fairfax house, although he "had suspicions" in that regard. At one point, Cutter saw a van parked in the garage at the subject property containing lights. Cutter told Nelson to get rid of the lights, and he complied. According to Cutter, "I never observed any indication that Mr. Nelson actually grew or attempted to grow marijuana at the Fairfax house."[14]

Cutter states in his affidavit that he was "preparing to evict" Nelson from the property. Nelson was aware of a grand jury investigation, however, and expected to be indicted. According to Cutter, Nelson told him "that I should hold off on eviction because he would likely be indicted and arrested, which would effectively remove him from the property."[15] Cutter knew from previous experience that evicting a tenant from property can be "long, difficult and expensive." Accordingly, Cutter decided to hold off evicting Nelson due to the likely criminal charges. On January 27, 2014, Nelson plead guilty to conspiracy to distribute and possess with intent to distribute marijuana, and was subsequently sentenced to serve 41 months' imprisonment.

### E. Cutter's Financial Situation

In 2005, Cutter became self-employed, doing business as Cutter Construction. In support of its motion for summary judgment, the Government sets forth an extensive review of Cutter's income and expenses, in an attempt to show that the mortgage on the Fairfax house was paid off using proceeds from Cutter's illegal drug dealings. In his resistance, Cutter disputes the assumptions and conclusions reached by the Government, and argues that it "substantially misstates my financial history." The Court will not unnecessarily extend this ruling by detailing the respective arguments.

---

[13] *Id.* at 3, ¶ 4 (Claimant's App. 3).

[14] *Id.* at 4, ¶ 4 (Claimant's App. 4).

[15] *Id.* at 4, ¶ 5 (Claimant's App. 4).

## V. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute as to a material fact "'exists if a reasonable jury could return a verdict for the party opposing the motion.'" *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Humphries v. Pulaski County Special School District*, 580 F.3d 688, 692 (8th Cir. 2009)). A fact is a "material fact" when it "might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to establish the existence of a genuine dispute as to a material fact, the non-moving party "'may not merely point to unsupported self-serving allegations.'" *Anda v. Wickes Furniture Co.*, 517 F.3d 526, 531 (8th Cir. 2008) (quoting *Bass v. SBC Communications, Inc.*, 418 F.3d 870, 872 (8th Cir. 2005)). Instead, the non-moving party "'must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.'" *Anda*, 517 F.3d at 531 (quoting *Bass*, 418 F.3d at 873); *see also Anderson*, 477 U.S. at 248 (A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party."). "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)). The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Foundation of America, Inc.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

## VI. DISCUSSION

The Government first argues that the Fairfax property was "derived from or traceable to drug proceeds" and, therefore, is subject to forfeiture pursuant to 21 U.S.C.

§ 881(a)(6). Alternatively, the Government argues that the property is subject to forfeiture pursuant to § 881(a)(7) because it was "used to facilitate" the sale of drugs.

### A. "Proceeds" Alternative

Anything of value which is traceable to an exchange of a controlled substance is subject to forfeiture. 21 U.S.C. § 881(a)(6). Under the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), "the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). *See also United States v. Real Property Located at 3234 Washington Ave. North, Mpls., Minn.*, 480 F.3d 841, 843 (8th Cir. 2007). Here, the Government claims that Cutter used proceeds from the sale of drugs to pay off the mortgage on the subject property.

In asking the Court to summarily order forfeiture of the Fairfax property, the Government argues that there is no genuine issue of material fact. In his affidavit, however, Cutter disputes many of the assumptions and conclusions reached by the Government. When viewing the evidence in the light most favorable to Cutter (the nonmovant), the Court concludes that the Government is not entitled to summary judgment under the "proceeds" alternative. *Id.* at 844 ("The difficulty here is that the government's summary judgment evidence did not go unrefuted.").

### B. "Facilitation" Alternative

Alternatively, the Government argues that the house in Fairfax was used to facilitate the sale of drugs. "All real property . . . which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of" a serious drug offense is subject to forfeiture. 21 U.S.C. § 881(a)(7). When the Government claims that property is subject to forfeiture because it was used to facilitate the commission of a criminal offense, CAFRA requires that the Government "establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). "The term 'facilitate' encompasses 'activity making the prohibited conduct less difficult or more or

less free from obstruction or hindrance.'" *Id.* at 843 (quoting *United States v. Premises Known as 3639-2nd Street N.E., Mpls., Minn.*, 869 F.2d 1093, 1096 (8th Cir. 1989)).

The Court concludes that disputed facts prohibit the granting of summary judgment on the facilitation alternative. Because the Court concludes that the Government is not entitled to summary judgment, it need not address Cutter's affirmative defenses at this time.

## VII. ORDER

IT IS THEREFORE ORDERED that the Motion for Summary Judgment (docket number 56) filed by the United States is **DENIED**.

DATED this 29th day of October, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA